937 P.2d 434

**Neal K. POWELL and Dianne B. Powell, husband and wife, Plaintiffs–Counterdefendants–Appellants-Cross Respondents,**

v.

**Kenneth W. SELLERS, a single man; Robert Sellers and Robyn L. Sellers, husband and wife, Defendants–Respondents,**

and

**Orville Durrant and Fay Durrant, husband and wife; Duane Durrant, a single man; Bobby Wayne Whitehead and Linda Ann Whitehead, husband and wife, Defendants–Counterclaimants–Respondents-Cross Appellants.**

No. 22580.

Court of Appeals of Idaho.

May 5, 1997.

Kerr Law Office, Blackfoot, for appellants. Robert M. Kerr, Jr. argued, Blackfoot.

Whittier, Souza and Clark, Chtd., Pocatello, for respondents-Sellers. John Souza argued, Pocatello.

PERRY, Judge.

In this case we are asked to review a number of rulings by the district court. After a review of the record and applicable law, we affirm.

## I.

### FACTS AND PROCEDURE

This is a consolidated case, that originated as four separate proceedings, and involves the owners of three adjacent parcels of property. The parties agreed to settle their disputes through the construction of a new ditch to service the properties. They entered into a detailed stipulation for the construction of the ditch, which was accepted by the district court.

The stipulation provided that Neal Powell was to provide certain equipment, move sand from the southeast corner of the Durrant property to the northeast corner of the same property for use as the ditch pad, and construct the ditch pad as described in the stipulation. After Powell constructed a ditch pad, Kenneth Sellers was to construct a ditch on the pad provided by Powell and work with Bingham County for the placement of a culvert. The Sellers[1] agreed to pay Powell $1000. The Durrants[2] agreed to provide an

---

1. Kenneth W. Sellers and Robert Sellers and Robyn L. Sellers, husband and wife.

2. Orville H. Durrant and Fay Durrant, husband and wife; Duane Durrant; and Linda Ann Whitehead and Bobby Wayne Whitehead, husband and wife, will hereinafter be collectively referred to as the Durrants.

easement across their property for the ditch and to install two headgates. The Durrants also agreed to pay Powell $500.

The stipulation provided that construction of the new ditch pad was to begin by December 1, 1993. The new ditch was to be completed by March 15, 1994. An existing ditch was to remain in place and open until September 15, 1994. The stipulation provided for attorney fees to the prevailing party in an action to enforce the agreement.

In December 1993, Powell attempted to start the ditch pad project, but his tractor was not functioning properly. On March 2, 1994, he began the job, but the tractor was still not functioning properly. Powell then contacted Will Cagle and hired him to complete the ditch pad. Cagle finished placing the pad on March 7, 1994. The equipment used by Cagle was much bigger and heavier than the equipment specified in the stipulation.

On April 28, 1994, Powell filed a petition for a declaratory judgment. Powell asserted that the Sellers and the Durrants had failed to comply with the terms of the stipulation. Powell sought a declaration that the stipulation was still in effect, and the parties, therefore, remained bound to comply with the terms of the stipulation. Powell further sought a declaration that he was free to fill in the original ditch on his property after September 16, 1994. On June 21, 1994, the district court declared the stipulation to be effective and enjoined the Sellers and the Durrants from interfering with Powell's filling in of the original ditch on his property. The district court noted that Kenneth Sellers had not constructed the ditch as of that date, but had adequate time to do so before the September 15 date upon which Powell became authorized to fill in the original ditch. The district court determined that whether the stipulation had been breached and whether damages should be awarded were questions to be addressed in a separate proceeding. Powell's attorney filed a memorandum and affidavit in support of an attorney fee award. Kenneth Sellers, personally, and the Durrants, through counsel, objected to the requested attorney fees.

Meanwhile, the Durrants counterclaimed against Powell, alleging that Powell had damaged their property while constructing the ditch pad and further alleging that the ditch had not yet been constructed due to Powell's delay in placing the ditch pad. On September 26, 1994, the Durrants indicated that they were willing to withdraw the issue regarding the delay in placing the pad. The property damage claim went to trial, where a jury found that $5,000 of damage had been done to the Durrant property. The jury apportioned liability, finding that Powell was 80 percent responsible for the damage and that the Durrants were 20 percent responsible, and awarded the Durrants $4,000.

Powell moved for a j.n.o.v., or in the alternative for a new trial, and objected to an award of attorney fees. The district court denied the j.n.o.v. and new trial motions. The district court awarded the Durrants attorney fees attributable to the pursuance of the counterclaim and awarded Powell attorney fees related to the earlier declaratory judgment proceedings. Powell appeals, claiming over thirty errors by the trial court, and requesting attorney fees. The Durrants cross-appeal.

## II.

### ANALYSIS

Over questions of law, we exercise free review. *Kawai Farms, Inc. v. Longstreet,* 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992); *Cole v. Kunzler,* 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct.App.1989). However, we will defer to findings of fact based upon substantial evidence. *Staggie v. Idaho Falls Consol. Hosps.,* 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App.1986).

### A. Interpretation of the Stipulation

Powell's first four issues on appeal involve the interpretation of the stipulation. The stipulation provided that the new ditch was to run from point B–2 in the northeast corner of the Durrant property, as shown on a drawing of the involved parcels, to point B–3 in the southeast corner. Powell claimed at trial that B–2 was on the northern fence line of the Durrant property, while the Durrants

alleged that B–2 was actually at the Durrants' existing ditch. The relevance of this question arises because one of the ways in which the Durrants claimed that Powell harmed their property was by destroying and filling in the existing ditch in the northeast corner. Powell claims on appeal that the district court erred by failing to interpret the stipulation. Powell argues that allowing the jury to interpret the stipulation, and therefore determine where the new ditch was to end, was reversible error.

First, we note that the district court did interpret the stipulation. That interpretation was given to the jury through instruction 15, which provided, in part:

> You are instructed that the construction of a written instrument, stipulation or contract is a question of law for the court to decide. . . .
>
> Accordingly, the court gives you the following instructions as to the terms and legal effect of the stipulation made by the parties in August, 1993.
>
> . . . .
>
> It was the intention of the parties, among other things, to change the route of the Sellers' water to run through the Durrant/Sellers ditch from H–5 to the northeast corner of the Durrant property then through a new ditch from the northeast corner of the Durrant property (B–2) to a culvert across Tanner lane near the southeast corner of the Durrant property (B–3). . . .
>
> . . . .
>
> If Powell's equipment was inoperable Powell was under a duty to render performance that was substantial.
>
> It is for you to decide whether Powell's substituted service and/or performance was reasonable.

This instruction not only interprets the stipulation, but does so in strict compliance with Powell's demands. The instruction provides that point B–2 was in the northeast corner of the Durrant property, as Powell claims. The instruction identifies the issue for the jury as one of the reasonableness of Powell's actions on the property. Included in this question was the reasonableness of Powell's decision to fill in the existing ditch. Powell's assignments of error regarding the interpretation of the stipulation are without merit.[3]

## B. Jury Instructions

■ Powell claims that the district court made several errors in instructing the jury. The question of whether the jury has been properly instructed is a question of law over which we exercise free review. *Needs v. Hebener,* 118 Idaho 438, 441, 797 P.2d 146, 149 (Ct.App.1990). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *L & L Furniture Mart, Inc. v. Boise Water Corp.,* 120 Idaho 107, 110, 813 P.2d 918, 921 (Ct. App.1991).

■ Powell claims that the district court should not have given instruction 17, regarding Powell's ability to alter the portion of the ditch which ran across his property. Powell claims that the district court should, instead, have given Powell's proposed instruction 15, which provided that Powell could alter the flow of the ditch on his property, so long as it did not place an unreasonable burden on the Durrants. We agree that it would have been preferable for instruction 17 to include the term "reasonable." As noted above, however, given instruction 15 clearly states that the jury was to determine the reasonableness of Powell's actions. Hence, the instructions, taken as a whole, adequately cover this point. Further, the Durrants did not claim that the Powell's action in raising his own ditch caused them damage. Rather, they argued that Powell caused damage to their property while negligently moving sand to construct the ditch.

Powell claims that the district court erred in instructing the jury regarding the substitution of equipment, rental cost, and crop loss. After a thorough review of the instructions provided, we conclude that the instructions fairly and accurately reflect the applica-

---

**3.** We offer no opinion as to the correctness of this statement that interpretation of the stipulation is a question of law for the trial court. However, it is not challenged on appeal.

ble law on these points. Powell's assignment of error in this regard lacks merit.

## C. Exhibits

Powell contends that the court clerk mishandled the exhibits. Specifically he claims that three of his exhibits, which had been admitted, were not provided to the jury. Powell further alleges that the jury was allowed to consider unadmitted exhibits, including three photographs, unmarked drawings by Faye Durrant and Linda Whitehead, pictures of a drawing by Wayne Whitehead, and a set of interrogatories.

■ Powell's admitted exhibits 31A, 31B and 33 were not provided to the jury because they were inadvertently removed from the courtroom by Powell's own attorney. Each of these exhibits was an illustrative aid. Exhibits 31A and 31B were portions of an aerial photographic view of the area in question. Powell's exhibit 31 is a copy of the same photo. Exhibit 33 is a rough depiction of the area and was drawn by hand. Powell's exhibit 35 is a much more detailed drawing of a greater portion of the same area. After reviewing these exhibits, we conclude that the error in failing to submit the three exhibits was harmless in light of the fact that other exhibits adequately satisfy the illustrative purpose behind their admission.

■ Powell asserts that several unadmitted exhibits may have gone to the jury. However, there is no basis to support Powell's allegations regarding which exhibits were taken to the jury room. Powell cites to the affidavit of his attorney, which was submitted to the district court in support of Powell's post-trial motions, on this point. In that affidavit, counsel specifically stated, "there was nothing to indicate which exhibits had been taken to the jury room and those which had been retained by the clerk." Powell has failed to provide a record adequate to support this claim of error. It is the responsibility of the appellant to provide a sufficient record to substantiate their claims on appeal. *Chenoweth v. Sanger*, 123 Idaho 189, 191, 846 P.2d 191, 193 (1993). We will not presume error on appeal. Powell's claims of error regarding the publication of exhibits to the jury do not provide a basis for relief on appeal.

## D. Evidence Regarding the Amount of Damage Done to the Property

Powell contends that the district court erred in allowing testimony of the Durrants and their witnesses regarding the value of the damage done to their property. Powell contends that the evidence submitted constituted conjecture and did not support the jury award.

■ Damages, and the amount thereof, must be proven to a reasonable certainty. *Wing v. Hulet,* 106 Idaho 912, 919, 684 P.2d 314, 321 (Ct.App.1984); *Eliopulos v. Kondo Farms, Inc.,* 102 Idaho 915, 919, 643 P.2d 1085, 1089 (Ct.App.1982). "Reasonable certainty" does not require mathematical exactitude, but only that the damages be taken out of the realm of speculation. *Bumgarner v. Bumgarner,* 124 Idaho 629, 640, 862 P.2d 321, 332 (Ct.App.1993). In fixing that amount, it is for the trier of fact to determine the credibility of the witnesses, to resolve conflicts in the evidence and to draw reasonable inferences therefrom. *Id.*

Two excavation professionals, McNeeley and Goodwin, testified regarding their bids for repairing the old ditch which had been filled in and destroyed by Powell. The bid of McNeeley was admitted after the prices were redacted because of problems with his computation. Goodwin's bid was admitted over objection. Linda and Wayne Whitehead testified to the number of trees removed from the property, and to their estimate of the trees' value. They also testified that they had to buy an extra four and a half tons of hay to feed their cattle because the damage to the property, ditch and fence delayed the time when the cattle could graze in the pasture. They further stated the amount paid for that hay. The Durrants, and several other witnesses, testified that there was damage to the pasture. Linda and Wayne Whitehead testified that five acres had been damaged and that their estimate for repair was $300 per acre for reseeding the pasture. Linda testified that she had reseeded the property several times in the past.

In an action for injury to land, where the injury is temporary, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury. *Bumgarner,* 124 Idaho at 639, 862 P.2d at 331. The proper measure for the value of the trees which were removed from the property was the market value cost of replacement. *Id.* at 641, 862 P.2d at 333.

We are constrained to conclude that Linda and Wayne Whitehead were competent witnesses concerning the value of their property. *See Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.,* 127 Idaho 41, 44, 896 P.2d 949, 952 (1995). In light of the Whiteheads' testimony and other evidence presented, the monetary value of the damage done to the property was sufficiently established. Although Powell also contends that the amount of the award was not supported by the record, we note that the total amount of the award was less than Goodwin's bid for repairing the ditch. The amount of the award was well within the estimates for repair to the entire pasture, and Powell's claims in this regard are not meritorious.

## E. Post-trial Motions

### 1. J.N.O.V.

In considering the district court's denial of Powell's j.n.o.v. motion, this Court is to determine whether as a matter of law there was sufficient evidence upon which reasonable jurors could return a verdict in favor of the plaintiffs; or, as stated by our Supreme Court, "there can be but one conclusion as to the verdict that reasonable minds could have reached." *Quick v. Crane,* 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). If an alternative motion for new trial is made with the j.n.o.v. motion, the trial court must rule on both motions separately. *Quick,* 111 Idaho at 767, 727 P.2d at 1195.

The district court in this case analyzed the issues separately and independently for each motion. The district court recognized the relevant standards and legal principles applicable to a motion for j.n.o.v. The district court noted that it was surprised by the verdict, but that after careful consideration the district court determined that the evidence was sufficient for reasonable jurors to find for the Durrants. We agree. The jury's verdict is supported by sufficient, competent evidence. Accordingly, we affirm the district court's denial of Powell's j.n.o.v. motion.

### 2. Motion for new trial

In reviewing a motion for new trial, the district court has broad discretion. *Quick,* 111 Idaho at 766, 727 P.2d at 1194. On a motion for new trial, the trial court weighs the evidence and the credibility of the witnesses, although the court does not do so in reviewing a j.n.o.v. motion. *Id.* This Court will uphold the trial court's grant or denial of a motion for new trial unless the trial court manifestly abused the wide discretion vested in it. *Id.* at 770, 727 P.2d at 1198; *Litchfield v. Nelson,* 122 Idaho 416, 422, 835 P.2d 651, 657 (Ct.App.1992).

The district court in this case recognized the relevant standards and legal principles applicable to a motion for new trial. The district court determined that its valuation of the evidence and that adopted by the jury were equally valid. The district court denied the motion. After a thorough examination of the record, we cannot find that the district court abused its discretion in this regard.

## F. Other Issues

Powell asserted a multitude of other issues on appeal. However, these issues were not supported by either argument or authority on appeal. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). We will not address these issues further.

## G. Attorney Fees Below

Powell contends that it was error for the district court to award fees to the Durrants. Powell claims that this action was a tort action and that a tort action is one where the parties generally bear their own attorney fees regardless of who prevailed. *See Fuller*

*v. Wolters,* 119 Idaho 415, 425, 807 P.2d 633, 643 (1991).

The district court considered I.C. § 12–121 and I.C. § 12–120(3) as grounds for an award of fees to the Durrants. Under I.C. § 12–121 and I.R.C.P. 54(e)(1), a court may award attorney fees to the prevailing party where it finds that "the case was brought, pursued or defended frivolously, unreasonably or without foundation." The district court specifically found that an award of fees in this regard was inappropriate in this case.

The district court went on to I.C. § 12–120(3), which provides for fees incurred if the suit involved a commercial transaction. The district court considered the stipulation of the parties to be a commercial contract and the action for recovery of damages for the negligent performance of the contract to be on a "commercial transaction."

On a claim for attorney fees under I.C. § 12–120(3), the district court is to determine "whether the commercial transaction comprises the gravamen of the lawsuit, that is, whether the commercial transaction is integral to the claim and constitutes the basis upon which the party is attempting to recover." *Spence v. Howell,* 126 Idaho 763, 776, 890 P.2d 714, 727 (1995). The district court stated that performance "under the contract was in a commercial setting and the negligent performance as found by the jury would have to be considered in that same setting." Hence the question is whether the stipulation was integral to the claims that Powell damaged the property while performing.

In *Brooks v. Gigray Ranches, Inc.,* 128 Idaho 72, 910 P.2d 744 (1996), the Idaho Supreme Court examined whether an award of attorney fees under I.C. § 12–120(3) was appropriate in a case involving a claim for conversion. The owner of a herd of cattle sued a landholder for breach of an agistment contract.[4] The landholder counterclaimed, pursuant to the tort of conversion. The jury found against the owner on the breach of contract claim and for the landholder on the conversion claim. The jury verdict was consistent with either the theory that there was no contract for the relevant year or that the contract expired prior to the events at issue. The court determined that the landholder was not entitled to an award of fees under I.C. § 12–120(3), because the claim was based on the tort of conversion and was not based on the contract. *Brooks,* 128 Idaho at 78–79, 910 P.2d at 750–51.

In *Brooks,* the jury found that there was no contract in force at the relevant times. Here, the Durrants' successful claim was based on the negligent performance of a contract, the stipulation. There is no dispute that the stipulation was in effect when Powell damaged the Durrants' property. Although the claim is not a standard breach of contract claim, we find that the nexus between the stipulation and the negligence claim in this case is closer than that between the agistment contract and the conversion claim in *Brooks.* This case is distinguishable from *Brooks* because the stipulation between the parties was still in effect and was the gravamen of the lawsuit. The district court properly awarded fees on the statutory basis of I.C. § 12–120(3). We note that an award of fees may also have been appropriate on the alternate basis of the attorney fee provision in the stipulation, as suggested by the Durrants. The stipulation provided for an award of attorney fees to the prevailing party in an action initiated to enforce the agreement. The Durrants filed this action to recover for negligent performance of the contract by Powell. We uphold the award of attorney fees pursuant to I.C. § 12–120(3).

**H.   Cross-Appeal**

The Durrants claim that no substantial evidence supported the jury's finding that Powell was only liable for 80 percent for the damage to the Durrant property. However, other than stating this issue as their cross-appeal issue, they provide no argument or authority on appeal to support the issue. Further, the determination and apportionment of negligence is for the trier of fact to

---

4.   An agistment contract is a particular kind of bailment under which a person, for consideration, takes animals for care and pasturing on his land. BLACKS' LAW DICTIONARY 66 (6th ed. 1990).

determine and will not be set aside if supported by competent and substantial evidence. *Smith v. David S. Shurtleff & Assoc.,* 124 Idaho 239, 241, 858 P.2d 778, 780 (Ct. App.1993). Powell provided testimony at trial to support the position that the ditch banks failed due to the Durrants' use of flood irrigation, failure to install headgates and poor maintenance. This testimony is sufficient to support the jury's apportionment of liability. Accordingly, the Durrants' cross-appeal fails.

## I. Costs and Fees on Appeal

 Both parties request attorney fees. Powell brought thirty issues on appeal, many of which were without substance, eleven of which were not even the subject of argument and none of which were meritorious. Accordingly, he did not prevail and is not entitled to costs or attorney fees on appeal. The Durrants were successful in defending against Powell's appeal, and may have been entitled to costs and attorney fees for their defense of that action. However, they brought an unsuccessful cross-appeal which merely asked us to reevaluate the evidence and set aside a decision based on competent and substantial evidence presented at trial. An appeal should do more than simply invite the appellate court to second-guess a finder of fact on conflicting evidence. *Krebs v. Krebs,* 114 Idaho 571, 576, 759 P.2d 77, 82 (Ct.App.1988). *See also Pass v. Kenny,* 118 Idaho 445, 449, 797 P.2d 153, 157 (Ct.App.1990). Accordingly, we conclude that neither party was a "prevailing party," and we award neither party attorney fees or costs on appeal.

## III.

### CONCLUSION

The jury instructions, taken as a whole, fairly and accurately reflect the applicable law. The instructions further address, properly, the issue of the interpretation of the stipulation. Powell has failed to demonstrate which, if any, exhibits that were not admitted during trial were published to the jury. Further, the exhibits which were not provided to the jury, due to counsel's oversight, were cumulative of those published to the jury. Sufficient, competent evidence supports the amount of the damage award. Powell's post-trial motions were properly denied. The attorney fee award below is upheld. The cross-appeal is denied due to a lack of argument and authority, and further because the jury's apportionment of liability is supported by substantial and competent evidence. No costs or attorney fees are awarded on appeal.

WALTERS, C.J., and LANSING, J., concur.